UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| Maurice Bowers, | |
|---|---|
| Plaintiff, | Civ. No. 16-6589 (KM) |
| v. | |
| Commissioner of Social Security, | OPINION |
| Defendant. | |

**KEVIN MCNULTY, U.S.D.J.:**

Maurice Bowers brings this action pursuant to 42 U.S.C. § 405(g) to review a final decision of the Commissioner of Social Security ("Commissioner") denying his claims to Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401–34.

The critical issue on this, Mr. Bowers' second appeal, is whether the ALJ properly denied benefits because alcoholism contributed to his disability. It is possible to imagine a system in which alcoholism is treated as a medical impairment like any other. That, however, is not the system that Congress and the Social Security Administration have adopted, and this Court's review is constrained by statute and by the Administration's implementing regulations. (*See* Section II.B, *infra.*) For the reasons set forth below, the decision of the Administrative Law Judge ("ALJ") is AFFIRMED.

I. **Background**

Mr. Bowers seeks to reverse an ALJ's finding that he was not disabled from November 25, 2008, the alleged onset date, through December 16, 2015, the date of the ALJ's decision. (R. 22-31).[1]

---

[1] Pages of the administrative record (ECF nos. 6 to 6-13) are cited as "R. \_\_." The Brief in Support of Plaintiff (ECF no. 13) is cited as "Pl. Br." Defendant's Brief Pursuant to Local Civil Rule 9.1 (ECF no. 15) is cited as "Def. Br."

1

Mr. Bowers applied for DIB under Title II and supplemental security income under Title XVI on September 24, 2010, alleging that he has been disabled since November 25, 2008. (R. 340). The specific disabilities alleged were left eye blindness, metal rods in his right leg, asthma, depression, and a stomach stab wound. (R. 70). Mr. Bowers originally sought benefits starting from November 25, 2008. He amended the onset date to May 18, 2010, however, at an April 6, 2012 hearing before ALJ April M. Wexler. (R. 38).

Mr. Bowers' applications were denied on April 12, 2011 (R. 69-74), and upon reconsideration on December 1, 2011. (R. 77-82). On February 1, 2012, Mr. Bowers requested an administrative hearing. (R. 88-89). On April 6, 2012, Mr. Bowers appeared with counsel, Patricia Franklin, at a hearing before ALJ Wexler. (R. 34-64). Mr. Bowers and Rocco Meola, a vocational expert, testified. (R. 38-64). On April 17, 2012, the ALJ issued a decision finding that Mr. Bowers could perform unskilled, sedentary work and therefore was not disabled. (R. 17-33). On November 19, 2012, the Appeals Council denied Mr. Bowers' request for review, (R. 1-6), rendering the ALJ's decision the final decision of the Commissioner. Mr. Bowers then appealed to the U.S. District Court for the District of New Jersey.

In a written opinion dated June 27, 2014, Judge Claire C. Cecchi affirmed in part, vacated in part, and remanded the ALJ's decision. (R. 362-76) (reported as *Bowers v. Colvin*, No. 13-CV-444 CCC, 2014 WL 2926524 (D.N.J. June 27, 2014)). In particular, Judge Cecchi found that the ALJ erred when considering Mr. Bowers' subjective complaints during the Residual Functional Capacity analysis. (R. 370-73). Judge Cecchi "vacate[d] the ALJ's credibility determination with respect to the time and frequency [Mr. Bowers] need[ed] to clean his eye socket, and . . . remand[ed] the case with instruction to reopen the Record on th[at] point, and to determine whether or not the duration and frequency would affect [Mr. Bowers'] RFC." (R. 373).

Based on Judge Cecchi's decision, on August 6, 2014, the Appeals Council vacated the final decision of the Commissioner of Social Security and remanded the case to an ALJ for further proceedings consistent with the

2

opinion. (R. 422) A remand hearing was held on January 29, 2015. (R. 377-409) Mr. Bowers appeared with counsel, Agnes Wladyka, before ALJ Meryl L. Lissek. (R. 377-409). Mr. Bowers testified. (R. 381-408).

A supplemental hearing was held on November 10, 2015. (R. 410-19). Mr. Bowers appeared with counsel, Ms. Wladyka, before ALJ Lissek. Andrew Vaughn, a vocational expert, testified. (R. 413-19). On December 16, 2015, the ALJ issued a decision finding that, absent substance abuse, Mr. Bowers could perform unskilled sedentary work, and therefore was not disabled. (R. 340-60).

On August 9, 2016, the Appeals Council denied Mr. Bowers' request for review (R. 326-31), rendering the ALJ's decision the final decision of the Commissioner.

Mr. Bowers then appealed to this Court, challenging the ALJ's determination that he was not disabled from November 25, 2008[2] through December 16, 2015.

## II. Discussion

### A. The Five-Step Process

Under the authority of the Social Security Act, the Social Security Administration has established a five-step evaluation process for determining whether a claimant is entitled to benefits. 20 C.F.R. §§ 404.1520, 416.920. This Court's review necessarily incorporates a determination of whether the ALJ properly followed the five-step process prescribed by regulation. The steps may be briefly summarized as follows:

> **Step 1:** Determine whether the claimant has engaged in substantial gainful activity since the onset date of the alleged disability. 20 C.F.R. §§ 404.1520(b), 416.920(b). If not, move to step two.
> 
> **Step 2:** Determine if the claimant's alleged impairment, or combination of impairments, is "severe." *Id.* §§ 404.1520(c),

---

[2] On remand, Mr. Bowers relied on an onset date of November 25, 2008, rather than the onset date of May 18, 2010, that was alleged in his initial application for benefits. *Compare* R. 20 and R. 38 *with* R. 340.

3

416.920(c). If the claimant has a severe impairment, move to step three.

**Step 3:** Determine whether the impairment meets or equals the criteria of any impairment found in the Listing of Impairments. 20 C.F.R. Pt. 404, subpt. P, app. 1, Pt. A. (Those Part A criteria are purposely set at a high level, to identify clear cases of disability without further analysis.) If so, the claimant is automatically eligible to receive benefits; if not, move to step four. *Id.* §§ 404.1520(d), 416.920(d).

**Step 4:** Determine whether, despite any severe impairment, the claimant retains the Residual Functional Capacity ("RFC") to perform past relevant work. *Id.* §§ 404.1520(e)–(f), 416.920(e)–(f). If not, move to step five.

**Step 5:** At this point, the burden shifts to the Commissioner to demonstrate that the claimant, considering his age, education, work experience, and RFC, is capable of performing jobs that exist in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(g), 416.920(g); *see Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 91-92 (3d Cir. 2007). If so, benefits will be denied; if not, they will be awarded.

### B. Consideration of Substance Abuse

In cases involving individuals suffering from drug or alcohol addiction, "[a]n individual shall not be considered to be disabled ... if alcoholism or drug addiction would . . . be a contributing factor material to the Commissioner's determination that the individual is disabled." 42 U.S.C. § 423(d)(2)(C), 1382c(a)(3)(J); *see also* 20 C.F.R. §§ 404.1535, 416.935.

In determining whether drug addiction or alcoholism is a material contributing factor to an individual's disability, the "key factor" is "whether [the ALJ] would still find [the claimant] disabled if [he or she] stopped using drugs or alcohol." 20 C.F.R. § 404.1535(b)(1). To make this determination, the ALJ

4

must evaluate which of the claimant's physical and mental limitations would remain if the claimant stopped using drugs or alcohol. 20 C.F.R. § 404.1535(b)(2). The ALJ must then determine whether any or all of the claimant's remaining limitations would be disabling. *Id.*

If the ALJ finds that the claimant's remaining limitations would not be disabling, the ALJ "will find that [the claimant's] drug addiction or alcoholism is a contributing factor material to the determination of disability." 20 C.F.R. § 404.1535(b)(2)(i). If, however, the ALJ finds that the claimant's remaining limitations are disabling, the claimant is "disabled independent of [his or her] drug addiction or alcoholism" and the ALJ "will find that [the claimant's] drug addiction or alcoholism is not a contributing factor material to the determination of disability." 20 C.F.R. § 404.1535(b)(2)(ii).

Social Security Ruling (SSR) 13–2p establishes the procedure used by ALJs when evaluating drug addiction or alcoholism materiality. SSR 13–2p, 78 Fed. Reg. 11939-47 (Feb. 20, 2013). First, the ALJ will "apply the sequential evaluation process to show how the claimant is disabled." *Id.* at 11942. Next, the ALJ will "apply the sequential evaluation process a second time to document [drug addiction and alcoholism] materiality ...." *Ibid.*

In determining materiality, SSR 13-2p provides a six-step evaluation process. It states: "Although the steps are in a logical order from the simplest to the most complex cases, we do not require our adjudicators to follow them in the order we provide. For example, when [drug addiction or alcoholism] is the only impairment adjudicators can go directly to step three and deny the claim because DAA is material." SSR 13–2p, 78 Fed. Reg. at 11941.

The steps are summarized as:

| | |
|---|---|
| 1. Does the claimant have *DAA*[3]? | a. No–No *DAA* materiality determination necessary. |
| | b. Yes–Go to step 2. |
| 2. Is the claimant disabled considering all impairments, including *DAA*? | a. No–Do not determine *DAA* materiality. (Denial.) |

---

3   "DAA" stands for drug addiction and alcoholism.

5

| | |
|---|---|
| | b. Yes–Go to step 3. |
| 3. Is *DAA* the only impairment? | a. Yes–*DAA* material. (Denial.) |
| | b. No–Go to step 4. |
| 4. Is the other impairment(s) disabling by itself while the claimant is dependent upon or abusing drugs or alcohol? | a. No–*DAA* material. (Denial.) |
| | b. Yes–Go to step 5. |
| 5. Does the *DAA* cause or affect the claimant's medically determinable impairment(s)? | a. No–*DAA* not material. (Allowance.) |
| | b. Yes, but the other impairment(s) is irreversible or could not improve to the point of nondisability–*DAA* not material. (Allowance.) |
| | c. Yes, and *DAA* could be material–Go to step 6. |
| 6. Would the other impairment(s) improve to the point of nondisability in the absence of *DAA*? | a. Yes–*DAA* material. (Denial.) |
| | b. No–*DAA* not material (Allowance.) |

*Id.*

The Third Circuit has not decided whether the claimant or the Commissioner bears the burden of showing the materiality of substance abuse. *McGill v. Commissioner of Soc. Sec.*, 288 F. App'x 50, 52 (3d Cir. 2008) (finding allocation of burden immaterial because Commissioner would have met burden that substance abuse was dispositive).[4] Regardless of who has the burden, the ALJ still must identify "substantial evidence" to support his or her conclusion of materiality. *Martin v. Comm'r of Soc. Sec.*, 547 F. App'x. 153, 157 (3d Cir. 2013). Here, even on the assumption that the Commissioner has the burden, the ALJ's determination was supported by substantial evidence and must be affirmed.

---

[4] Other Circuits have held that the Commissioner has the burden on this issue. *Parra v. Astrue*, 481 F.3d 742, 748 (9th Cir. 2007); *Doughty v. Apfel*, 245 F.3d 1274, 1280 (11th Cir. 2001); *Pettit v. Apfel*, 218 F.3d 901, 903 (8th Cir. 2000); *Brown v. Apfel*, 192 F.3d 492, 498 (5th Cir. 1999).

**C. Standard of Review**

As to all legal issues, this Court conducts a plenary review. *See Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 431 (3d Cir. 1999). As to factual findings, this Court adheres to the ALJ's findings, as long as they are supported by substantial evidence. *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004) (citing 42 U.S.C. § 405(g)). Where facts are disputed, this Court will "determine whether the administrative record contains substantial evidence supporting the findings." *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Zirnsak v. Colvin*, 777 F.3d 607, 610 (3d Cir. 2014) (internal quotation marks and citation omitted). Substantial evidence "is more than a mere scintilla but may be somewhat less than a preponderance of the evidence." *Id.* (internal quotation marks and citation omitted).

> [I]n evaluating whether substantial evidence supports the ALJ's findings ... leniency should be shown in establishing the claimant's disability, and ... the Secretary's responsibility to rebut it should be strictly construed. Due regard for the beneficent purposes of the legislation requires that a more tolerant standard be used in this administrative proceeding than is applicable in a typical suit in a court of record where the adversary system prevails.

*Reefer v. Barnhart*, 326 F.3d 376, 379 (3d Cir. 2003) (internal quotation marks and citations omitted). When there is substantial evidence to support the ALJ's factual findings, however, this Court must abide by them. *See Jones*, 364 F.3d at 503 (citing 42 U.S.C. § 405(g)); *Zirnsak*, 777 F.3d at 610-11 ("[W]e are mindful that we must not substitute our own judgment for that of the fact finder.").

This Court may, under 42 U.S.C. §§ 405(g), affirm, modify, or reverse the Commissioner's decision, or it may remand the matter to the Commissioner for a rehearing. *Podedworny v. Harris*, 745 F.2d 210, 221 (3d Cir. 1984); *Bordes v. Comm'r of Soc. Sec.*, 235 F. App'x 853, 865-66 (3d Cir. 2007).

7

Remand is proper if the record is incomplete, or if there is a lack of substantial evidence to support a definitive finding on one or more steps of the five-step inquiry. *See Podedworny*, 745 F.2d at 221-22. Remand is also proper if the ALJ's decision lacks adequate reasoning or support for its conclusions, or if it contains illogical or contradictory findings. *See Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119-20 (3d Cir. 2000). It is also proper to remand where the ALJ's findings are not the product of a complete review which "explicitly weigh[s] all relevant, probative and available evidence" in the record. *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (internal quotation marks omitted).

### D. The ALJ's Decision

ALJ Lissek (the "ALJ") properly followed the five-step sequential evaluation process in determining that Mr. Bowers was not disabled for the period of November 25, 2008, through December 16, 2015.

Pursuant to SSR 13-2p, the ALJ first conducted the five-step process to show how Mr. Bowers is disabled. Then, because the ALJ found Mr. Bowers' impairments to include alcohol abuse, the ALJ conducted the five-step process a second time to determine whether alcohol abuse was a "material contributing factor" to Mr. Bowers' disability.

I will now summarize her findings at each five-step analysis.

#### i. Initial five-step process

**Step 1:** At step one, the ALJ determined that Mr. Bowers had not engaged in substantial gainful activity in the relevant period. (R. 343).

**Step 2:** At step two, the ALJ found that Mr. Bowers had the following severe impairments: "enucleated left eye, status-post right leg injury resulting in right leg impairment, depression, PTSD, asthma, history of stab wound in the stomach, carpal tunnel syndrome, and drug and alcohol abuse."[5] (R. 343).

---

[5] The use of the phrase "drug and alcohol abuse" appears to be a typographical error. There is no evidence in the record that Mr. Bowers suffered from drug abuse *and* alcohol abuse. The record only reflects only alcohol abuse.

8

**Step 3:** At step three, the ALJ determined that, through December 16, 2015, Mr. Bowers did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Pt. 404, subpt. P., app. 1. (R. 343-44).

**Step 4:** At step four, "[a]fter careful consideration of the entire record. . . including the substance use disorder", the ALJ found that Mr. Bowers had the following residual functional capacity (RFC):

> to perform sedentary work as defined in 20 CFR 404.1567(a) and 419.967(a) except that [Mr. Bowers] can do work that does not require excellent peripheral vision or depth perception, needs to take a break for 10 minutes every 2 hours to clean discharge from his missing eye, and is limited to performing work that does not bring him into contact with temperature extremes, high humidity, or excessive amounts of dust or known pulmonary irritants. Moreover, [Mr. Bowers] can perform work that involves frequent, but not continuous, bilateral grasping, and is limited to work that can be learned in 1 month or less and involves simple instructions. Finally, the claimant would need a 10-minute break every hour and is able to focus no more than 15% of an 8-hour day.

(R. 345).

The ALJ stated that because she "determined that [Mr. Bowers] is disabled at [the fourth] step primarily due to his history of substance abuse and psychiatric impairments, the focus of [her] present analysis w[ould] be on the claimant's mental impairments." (R. 345).

The ALJ relied on the following evidence in determining Mr. Bowers' RFC. In May 2010, Mr. Bowers was seen at University Hospital for symptoms of depression. (Exh. 1F, R. 211; R. 345). Dr. Joseph Relta diagnosed Mr. Bowers with alcohol intoxication and depression. (Exh. 1F, R. 211; R. 345). Dr. Relta's treatment notes indicated that Mr. Bowers self-reported "drinking four 24 ounce cans of beer a day '"for many years."" (Exh. 1F, R. 214). Dr. Relta stated that Mr. Bowers had a "long history of alcohol abuse", was drinking without eating food, and was feeling weak and dizzy. (R. 222; R. 345). Moreover, Paul F. Fulford, a clinical psychologist, reported in late January 2011 that Mr. Bowers

9

has a history of "sleep disturbances and auditory hallucinations." (R. 345; Exh. 3F, R. 235).

A June 2014 report from Newark Beth Israel Medical Center noted that Mr. Bowers suffered from post-traumatic stress disorder and was engaging in "ongoing substance abuse." (Exh, 27F, R. 648; R. 345) The report found that Mr. Bowers was at risk to himself and others. (R. 648; R. 345) Moreover, treatment notes from Bethel Family and Youth Resource Center indicated that in April 2014, [Mr. Bowers] was admitted for treatment for alcohol abuse, which induced hallucinations and a diminished capacity to focus. (Exh. 30F, R. 656-62; R. 345) Mr. Bowers was discharged in October 2014 for not complying with his treatment regimen and continuing to drink alcohol. (R. 656; R. 345).

The ALJ also stated that in a January 2015 medical source statement, Dr. Kathyann Duncan opined that Mr. Bowers was unable to sustain work on a full-time basis and recommended that Mr. Bowers participate in a substance abuse program. (Exh. 23F, R. 627; R. 345). A more recent March 2015 letter from an outpatient program indicated that Mr. Bowers was admitted to the program in late October 2014, and that Mr. Bowers submitted two positive urine screens. (Exh. 29F, 654; R. 345).

**Step 5:** At step five, the ALJ considered Mr. Bowers' age, education, work experience, substance use disorder, and RFC, as well as the Medical-Vocational Guidelines, and determined that there are no jobs that exist in significant numbers in the national economy that the claimant can perform. (R. 346-47).

Relying on the testimony of a vocational expert ("VE"), Andrew Vaughn, who testified that "given all of the[] factors there are no jobs in the national economy that the individual could perform," the ALJ concluded that Mr. Bowers was disabled, as defined by the Social Security Act, from November 25, 2008 to December 16, 2015. (R. 347).

### ii. Second five-step process

Because the ALJ found Mr. Bowers' impairments to include alcohol abuse, the ALJ then conducted the five-step analysis a second time to control for the effects of the alcohol abuse.

10

The ALJ's findings at **Steps 1 and 2** are the same as those found in the initial five-step process. *See Section* D.i, *supra.*

**Step 3:** At step three of the second analysis, the ALJ determined that, through December 16, 2015, if Mr. Bowers stopped the alcohol use, he would not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Pt. 404, subpt. P., app. 1. (R. 347).

**Step 4:** At step four, the ALJ found that if Mr. Bowers stopped his alcohol use he would have the following RFC:

> perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except that [Mr. Bowers] can do work that does not require excellent peripheral vision or depth perception, needs to take a break for 10 minutes every 2 hours to clean discharge from his missing eye, and is limited to performing work that does not bring him into contact with temperature extremes, high humidity, or excessive amounts of dust or known pulmonary irritants. Moreover, [Mr. Bowers] can perform work that involves frequent, but not continuous, bilateral grasping, and is limited to work that can be learned in 1 month or less and involves simple instructions.

(R. 349).

The ALJ further stated that if Mr. Bowers stopped the alcohol use, his "medically determinable impairments could reasonably be expected to produce the alleged symptoms; however, [Mr. Bowers'] statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the [RFC] assessment. . ." (R. 350).

The ALJ then considered Mr. Bowers' medical record, numerous medical opinions, and subjective allegations, pointing out that Mr. Bowers had "submitted little evidence of sustained treatment for his impairments since his alleged onset date." (R. 350). The ALJ emphasized that "likewise there is a paucity of evidence of sustained treatment for either depression or PTSD. Indeed, in the few instances in which [Mr. Bowers] has been treated for mental

impairments, it has invariably been in the context of treatment for substance abuse." (R. 351; see Exhs. 1F; 3F; 23F; 30F).

As a final matter, the ALJ found it "worth emphasizing that the claimant testified that his longest period of sobriety from alcohol was for a six-month period [in] 2012. [Mr. Bowers] conceded that he functions better and communicates more clearly when he is not drinking." (R. 351).

**Step 5:** At step five, the ALJ considered Mr. Bowers' age, education, work experience, and RFC, as well as the Medical-Vocational Guidelines, and determined that if Mr. Bowers stopped the alcohol abuse, there would be a significant number of jobs in the national economy that Mr. Bowers could perform. (R. 352).

The ALJ consulted the vocational expert, Mr. Vaughn, and adopted the conclusion that Mr. Bowers would be able to perform the requirements of representative occupations, such as press operator, assembly clerk, and order clerk. (R. 352).

Based on these findings, the ALJ ultimately concluded that Mr. Bowers is not disabled within the meaning of the Social Security Act because "substance abuse is a contributing factor material to the determination of disability." (R. 352).

### E. Analysis of Maurice Bowers' Appeal

Maurice Bowers challenges ALJ Lissek's determination that Bowers' alcohol abuse was a "contributing factor material to the determination of disability." (Pl. Br. 17 to 23); 20 C.F.R. § 404.1535(b)(2)(i).

Mr. Bowers argues that the ALJ did not, but should have considered evidence of his disability during a period of alcohol abstinence. (Pl. Br. 20 to 23). He also argues that the ALJ's final RFC finding was not based on substantial evidence. (Pl. Br. 23). His argument focuses on the specific limitation that Mr. Bowers "would need a 10-minute break every hour and is able to focus no more than 15% of an 8-hour day", a limitation which was included in the ALJ's initial RFC determination, but absent from the ALJ's

12

second RFC determination. (R. 345; R. 349). Characterizing the different RFC determinations as contradictory, Mr. Bowers asserts that the ALJ erred by failing to explain why her second RFC decision did not include that limitation. (Pl. Br. 23 to 24).[6]

Mr. Bowers requests that this Court reverse the ALJ's decision. (Pl. Br. 24). Addressing each of Mr. Bowers' arguments in turn, I find that the ALJ's findings do not contain any errors of law or procedure, and that her findings are supported by substantial evidence.

### 1. Mr. Bowers' substance use was a material factor contributing to his disability

Mr. Bowers generally asserts that the ALJ failed to follow the six-step drug addiction and alcoholism evaluation process. (Pl. Br. 22). He further argues that the ALJ erred by not relying on evidence from a period of abstinence when considering whether Mr. Bowers' physical impairments would improve in the absence of alcohol abuse. (Pl. Br. 20 to 23). He relies on SSR 13-2p, and the reports from Paul F. Fulford, Ph.D., Dr. Christine Zolli, Dr. Justin Fernando, Dr. Kathyann S. Duncan, and MRI[7] scans as support. (Pl. Br. 20 to 22).

Mr. Bowers summarizes each of those reports' findings regarding Mr. Bowers' physical impairments. (Pl Br. 20 to 22). He emphasizes that the examinations do not mention intoxication, thereby suggesting that the examinations were conducted when he was not intoxicated. (Pl. Br. 20 to 22). Therefore, Mr. Bowers says, the reports are evidence of physical disabilities

---

[6]    Mr. Bowers' Statement letter pursuant to Local Rule 9.1, (ECF no. 7), presents different and additional arguments that are not reiterated in his brief (Pl. Br.). Local Rule 9.1(d) directs plaintiffs to serve the Commissioner with a statement "setting forth Plaintiff's primary contents or arguments as to why plaintiff believes that he or she is entitled to relief. L. Civ. R. 9.1(d). The purpose of the rule is "[t]o encourage early and amicable resolution of Social Security manners." *Id.* Local Rule 9.1(f) states that "[a]ll Social Security cases will be handled by the Court on written briefs unless a request for oral argument is granted or as otherwise directed by the Court." I will therefore only consider the arguments presented in the parties' briefs.

[7]    "MRI" refers to Magnetic Resonance Imaging.

13

that were present during a period of abstinence, which the ALJ should have considered. While the argument is not wholly frivolous, it is foreclosed by SSA regulations and this Court's standard of review.

"The Social Security Administration advises adjudicators assessing whether an individual's substance abuse problems were a factor material to the disability determination that '[t]he most useful evidence ... is that relating to a period when the individual was not using drugs/alcohol.'" *Mirabile v. Comm'r of Soc. Sec.*, 354 F. App'x 619, 622 (3d Cir. 2009) (quoting Social Security Administration, Questions and Answers Concerning DAA from the 07/02/96 Teleconference, No. EM–96200 (Aug. 30, 1996)).

SSR 13-2p addresses the relevance of a period of abstinence[8] in determining whether drug addiction and alcohol abuse is material. It provides, in part:

> b. Usually, evidence from a period of abstinence is the best evidence for determining whether a physical impairment(s) would improve to the point of nondisability. The period of abstinence should be relevant to the period we are considering in connection with the disability claim. This evidence need not always come from an acceptable medical source. If we are evaluating whether a claimant's work-related functioning would improve, we may rely on evidence from "other" medical sources, such as nurse practitioners, and other sources, such as family members, who are familiar with how the claimant has functioned during a period of abstinence . . . .
>
> v. Adjudicators should generally not rely on a medical opinion to find that DAA is material if the case record contains credible evidence from an acceptable medical source from a relevant period of abstinence indicating that the impairment(s) would still be disabling in the absence of DAA. In cases in which it is appropriate to rely on a medical opinion to find that DAA is material despite evidence indicating the impairment(s) may not improve, adjudicators must provide an appropriate rationale to resolve the apparent conflict in the evidence.

---

[8] The term "period of abstinence" is used in SSR 13-2p "to describe a period in which a claimant who has, or had, been dependent upon or abusing drugs or alcohol and stopped their use." SSR 13–2p, 78 Fed. Reg. at 11943 n.17.

14

> d. We will find that DAA is not material to the determination of disability and allow the claim if the record is fully developed and the evidence (including medical opinion evidence) does not establish that the claimant's physical impairment(s) would improve to the point of nondisability in the absence of DAA.

SSR 13-2p, 78 Fed. Reg. at 11943.

Here, in a detailed and comprehensive opinion, the ALJ addressed all of the reports now cited by Mr. Bowers. She properly supported her conclusion that Mr. Bowers' impairments were not totally disabling, as shown by evidence that showed Mr. Bowers' ability to function when he stopped drinking alcohol. True, the medical reports do not indicate that Mr. Bowers was intoxicated at the precise time of examination; that omission, however, does not compel a finding that there was a *period* of abstinence. The ALJ recognized these specific instances of (presumed) sobriety and considered them in rendering her opinion. No more is required.

### 2. The ALJ's assessment of Mr. Bowers' RFC

Mr. Bowers asserts that the ALJ did not properly assess his RFC. (Pl. Br. 23). Specifically, he claims that the ALJ failed to explain why her second RFC determination, which evaluated Mr. Bowers as if he had stopped using alcohol, did not include the limitation of Mr. Bowers "need[ing] a 10 minute break every hour and [being] able to focus no more than 15% of an 8-hour day." (Pl. Br. 23; R. 345; R. 349). Mr. Bowers argues that "on th[at] error alone", this case must be remanded. (Pl. Br. 24). Upon a review of the record, I find that substantial evidence supports the ALJ's second RFC decision and that a remand is not warranted.

RFC is an assessment of the most a claimant can do despite his impairments. 20 C.F.R. § 404.1545. To determine a claimant's RFC, an ALJ must engage in a two-step process: first, consider all of a claimant's symptoms that can reasonably be accepted as consistent with the objective medical evidence; and second, determine how those symptoms affect the claimant's ability to work. 20 C.F.R. § 404.1529. In making the RFC determination, an

15

ALJ is not required "to adhere to any set format for explaining [her] analysis so long as there is 'sufficient development of the record and explanation of findings to permit meaningful judicial review.'" *Garrett v. Comm'r of Soc. Sec.*, 274 F. App'x 159, 162-63 (3d Cir. 2008) (quoting *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004)).

Here, pursuant to SSR 13–2p, the ALJ provided two RFCs: one which considered Mr. Bowers' alcohol abuse, and another which hypothesized no alcohol abuse.

In the initial RFC analysis which considered Mr. Bowers' alcohol abuse, the ALJ found that Mr. Bowers had the RFC

> to perform sedentary work as defined in 20 CFR 404.1567(a) and 419.967(a) except that [Mr. Bowers] can do work that does not require excellent peripheral vision or depth perception, needs to take a break for 10 minutes every 2 hours to clean discharge from his missing eye, and is limited to performing work that does not bring him into contact with temperature extremes, high humidity, or excessive amounts of dust or known pulmonary irritants. Moreover, [Mr. Bowers] can perform work that involves frequent, but not continuous, bilateral grasping, and is limited to work that can be learned in 1 month or less and involves simple instructions. *Finally, the claimant would need a 10-minute break every hour and is able to focus no more than 15% of an 8-hour day.*

(R. 345)(emphasis added).

The ALJ further explained that "based upon the objective medical record, the opinion of Dr. Duncan, and the fact that multiple reports indicate that [Mr. Bowers] has been engaging in sustained alcohol use throughout the period at issue," she would "find that [Mr. Bowers] is unable to focus more than 15% of the workday and requires 10-minute breaks every hour." (R. 346). The ALJ provided a thorough summary of Mr. Bowers' medical records and Dr. Duncan's opinion. Her review included treatment notes which stated that Mr. Bowers was admitted to Bethel Family and Youth Resource Center due to alcohol abuse, which induced symptoms of hallucinations and a diminished capacity to focus. (R. 345; Exh. 30F p. 1-6).

16

Next, because the ALJ found Mr. Bowers' impairments to include alcohol abuse, the ALJ conducted the five-step analysis a second time to determine whether the alcohol abuse was a "material contributing factor" to Mr. Bowers' disability.

In the second RFC analysis, the ALJ did not include the requirement from the first RFC analysis that Mr. Bowers "needs a 10 minute break every hour and is able to focus no more than 15% of an 8-hour day." (R. 345; R. 349). Rather, the ALJ concluded that if Mr. Bowers stopped the alcohol abuse, he would have the RFC to

> perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except that [Mr. Bowers] can do work that does not require excellent peripheral vision or depth perception, needs to take a break for 10 minutes every 2 hours to clean discharge from his missing eye, and is limited to performing work that does not bring him into contact with temperature extremes, high humidity, or excessive amounts of dust or known pulmonary irritants. Moreover, [Mr. Bowers] can perform work that involves frequent, but not continuous, bilateral grasping, and is limited to work that can be learned in 1 month or less and involves simple instructions.

(R. 349).

I find that the ALJ did not err by failing to explicitly address and the differences between the two RFC analyses. The explanation for the discrepancy is implicit: one took alcohol use into account, and the other did not. In reaching her second RFC determination, the ALJ provided detailed findings regarding Mr. Bowers' mental and physical impairments, and referred to medical opinions and other medical evidence. *See* R. 349-52. She concluded that Mr. Bowers' "psychiatric limitations are primarily, if not exclusively, the result of substance abuse." R. 351 (citing Exhs. 6F and 19F). She also noted Mr. Bowers "conceded that he functions better and communicates more clearly when he is not drinking." R. 351. *See* R. 405-06. It is therefore inherent in the ALJ's opinion that absent alcohol abuse, Mr. Bowers would not "need a 10-minute break every hour and is able to focus no more than 15% of an 8-hour

day," because the psychological effects of alcohol on Mr. Bowers' mental state would not be present.

### III. Conclusion

For the foregoing reasons, I find that the ALJ's decision properly applied the applicable legal standards and was supported by substantial evidence. Under the applicable standard of review, that is sufficient to require that I uphold the ALJ's denial of Mr. Bowers' claims for DIB, and the decision of the Commissioner is therefore AFFIRMED. An appropriate order accompanies this Opinion.

Dated: October 20, 2017

*/s/ Kevin McNulty*
**KEVIN MCNULTY**
**United States District Judge**